# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: Moore Roofing, LLC,

      Debtor.

Case No. 23-21139-11

_____

**United States Trustee's Motion to Dismiss or Convert**
_____

Under 11 U.S.C. § 1112(b), the United States Trustee moves the Court to dismiss or convert this chapter 11 case for cause. The Court faces this issue:

> Cause for dismissal or conversion includes substantial loss to or diminution of the estate with no reasonable likelihood of rehabilitation, failure to file reports, failure to insure against losses, and failure to file a plan. Here, the debtor meets all those situations. Does cause exist?

The answer is yes. Moore Roofing has let most, or all, of its insurance expire, has fallen behind on financial reports, has failed to file a plan by the deadline—or the proposed extended deadline—and may be operating at a loss given that it is not paying taxes or insurance premiums. Cause exists, and dismissal would best serve the interests of creditors and the estate.

## Background

Moore Roofing is a roofing contractor in the Emporia area that also owns and rents out three residential properties and three commercial properties. It filed its bankruptcy petition on September 27, 2023.[1] After it filed an affidavit saying it had no statement of operations or cash flow statement,[2] Moore Roofing supplied to the United States Trustee a profit-and-loss statement for August showing the company had lost more than $26,000 that month. Moore Roofing filed a monthly operating report for October that purported to show a profit of $22,000, but a review of the bank statements shows that is partially based on $3,600 in transfers between bank accounts and counting a bounced check of $4,400 as income.[3] Moore Roofing hasn't filed any subsequent operating reports.

During the § 341 meeting of creditors, Moore Roofing's principal testified that the company was not paying payroll taxes because it could not afford it.

---

[1] Doc. #1.
[2] Doc. #9.
[3] Doc. #30.

As part of the initial financials, Moore Roofing submitted to the United States Trustee proof of multiple insurance policies. Based on those documents from Moore Roofing, the various insurance policies were set to expire:

- December 10, 2023 for policy on 401 Weaver St.;
- December 15, 2023 for policy on 702 W. 6th;
- December 15, 2023 for worker's compensation policy;
- December 15, 2023 for policy on 610 Lakeview St.;
- December 15, 2023 for policy on 401 1/2 Weaver St.; and
- December 15, 2023 for commercial general liability policy.

On November 21, 2023, the bank's counsel contacted counsel for Moore Roofing about the insurance policy on 812 E. 6th, which had expired on November 15, 2023. And on December 6, 2023, the bank was notified that Moore Roofing's insurance policy on 610 Lakeview St. had been cancelled early due to non-payment.

On December 7, 2023, counsel for the United States Trustee sent an e-mail to counsel for Moore Roofing about the expired and soon-to-expire insurance, asking for copies of new policies and if any non-expiring policies had been canceled. After follow-ups, counsel for Moore Roofing responded on December 18, 2023, to say that he would provide

any new insurance certificates he received when he received them. Nothing has been provided to date.

## Argument and Authorities

**I. Cause exists to dismiss or convert the case.**

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a chapter 11 case, and "is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."[4] It requires a court, upon a finding of cause, to convert a chapter 11 case to chapter 7 or dismiss the case.[5]

The Code lists several grounds for cause,[6] but those are illustrative rather than exhaustive.[7] A court may consider other grounds as they arise and may use its equitable powers to reach an appropriate result.[8] Indeed, while "cause" is not specifically defined anywhere in the

---

[4] *Lynch v. Bernard*, 590 B.R. 30, 35 (E.D.N.Y. 2018) (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (S.D.N.Y. 1995)).

[5] 11 U.S.C. § 1112(b)(1).

[6] *Id.* § 1112(b)(4).

[7] *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003).

[8] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *21 (Bankr. D. Kan. Dec. 21, 2015).

Bankruptcy Code, courts have interpreted it flexibly to include "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."[9] Cause exists in this case for several separate and independent reasons, each of which is sufficient grounds for dismissal.

### A. Cause exists for lack of insurance.

As a fiduciary, a chapter 11 debtor must protect and conserve property in its possession.[10] The reason is simple: to avoid deepening insolvency.[11] And under § 1112(b)(4)(C), cause for dismissal or conversion exists if the debtor fails to maintain insurance appropriate to cover risks to the estate and to the public.[12]

Here, there is risk to the estate as Moore Roofing has let all of its insurance lapse—at least one policy early due to non-payment. Given Moore Roofing's line of work, and the multiple real properties—most with tenants—that constitute the bulk of its assets, lack of insurance

---

[9] *In re Morris*, 155 B.R. 422, 426 (Bankr. W.D. Tex. 1993) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

[10] *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989).

[11] 5 *Norton Bankr. L. & Prac.* § 103:9 (3d ed. 2020).

[12] 7 *Collier on Bankr.* ¶ 1112.04[6][c] (16th ed. 2020).

5

poses a grave risk to the public as well as the estate. These conditions lay plain the risks to the estate and to the public. Accordingly, cause exists under § 1112(b)(4)(C).

### B. Cause exists for the debtor's failure to timely file its plan of reorganization.

Under § 1112(b)(4)(J), cause exists for failure to file or confirm a plan of reorganization within the time fixed by this title or by order of the Court.[13] A debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial to creditors—and which, by itself, is adequate justification for dismissing a chapter 11 case for cause.[14]

Subchapter V was designed to expedite small-business bankruptcy cases. Debtors must file their plans no later than 90 days after the petition date.[15] And here, the debtor has failed to meet its deadline.

---

[13] 11 U.S.C. § 1112(b)(4)(J).

[14] *De Jounghe v. Mender* (*In re De Jounghe*), 334 B.R. 760, 770–71 (B.A.P. 1st Cir. 2005); *Synovus Bank v. Brooks* (*In re Brooks*), 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) (citing *In re Babayoff*, 445 B.R. 64, 79 (Bankr. E.D.N.Y. 2011); *In re Tornheim*, 181 B.R. 161, 165 (Bankr. S.D.N.Y. 1995); *In re Erkins*, 351 B.R. 218, 219 (Bankr. M.D. Fla. 2006)).

[15] 11 U.S.C. § 1189(b).

Instead, it filed an extension motion at 8:53 pm on December 26, 2023—the day the plan was due. Although there is no statutory mandate that a debtor secure an extension before the plan-filing deadline has expired, the failure to do so may spell the end of the debtor's reorganization effort under § 1112(b)(4)(J).[16] As the *Online King* court observed:

> It defies logic for a debtor to delay moving to extend its time to file a plan for it runs the risk of facing a motion to convert or dismiss its chapter 11 case. And what then, what would be the debtor's defense? Section 1112(b) is clear; once "cause" is found to exist, "the court shall" convert or dismiss the case, "whichever is in the best interest of creditors and the estate." Why run the risk? It doesn't make sense. The 90-day period in a subchapter V case affords a debtor the opportunity to propose a chapter 11 plan free of any concern that its reorganization efforts will be disrupted or thwarted by a competing plan filed by a creditor. . . . The better practice is to identify early on whether the time limitation will be met and, if it cannot be met, move to extend the plan filing date sufficiently in advance of the deadline so that a hearing can be held before the time has expired.
>
> That said, the Court realizes that identifying an inability to meet the statutory deadline may not be readily apparent until the debtor is on the cusp of the deadline. In those instances, the debtor should move to extend its time before the deadline and request a hearing on shortened notice, or alternatively, request entry of a bridge order extending the

---

[16] *In re Online King, LLC*, 629 B.R. 340, 348 (Bankr. E.D.N.Y. 2021) (denying motion to extend the 90-day deadline .

plan-filing period until the motion can be heard and resolved.[17]

Here, Moore Roofing did not take any such measures. In addition, its stated basis for an extension was "conflicting schedules due to the holidays," which is not something beyond the debtor's control. Perhaps anticipating an objection to their extension request, Moore Roofing has slow-rolled the matter by setting it to hearing on February 15—more than a month after its proposed new deadline. By that time, it will already be a month and a half behind in filing its subchapter V plan.

In addition, Moore Roofing's requested extension was to January 5, 2024. That date came and went with no plan and no further extension request. Moore Roofing's slipshod treatment of its plan-filing obligations is not in keeping with either the letter or the spirit of subchapter V. For Moore Roofing's failure to timely file its subchapter V plan, the Court should dismiss the case for cause under § 1112(b)(4)(J).

### C. Cause exists for continuing loss.

Under § 1112(b)(4)(A), a court must convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of

---

[17] *Id.* (cleaned up).

a reasonable likelihood of rehabilitation. The two components that courts test are (1) whether, after the commencement of the case, the debtor continues to experience a negative cash flow or declining asset values; and (2) whether there is any reasonable likelihood that the debtor or some other party will be able to stem the debtor's losses and place the enterprise back on a solid financial footing within a reasonable amount of time.[18]

Here, it is difficult to tell the current financial condition of Moore Roofing due to its lack of reporting. But it is not paying its payroll taxes or numerous insurance policies and did not file a plan when due. That is indictive of a company operating in the red.

Courts in this District have previously granted motions to dismiss or convert in analogous situations in chapter 11. Dismissal has been granted when a hotel was operating at a loss with no evidence that it could be rehabilitated.[19] As Judge Somers noted in *Bentley*, because the statute uses the word "rehabilitation" rather than "reorganization," it

---

[18] *In re Western States, Inc.*, No. 17-20041, 2018 Bankr. LEXIS 247, at *13 (Bankr. D. Wyo. Jan. 30, 2018) (citations omitted).

[19] *In re Lenexa Hotel, L.P.*, No. 16-22172, 2018 Bankr. LEXIS 515 (Bankr. D. Kan. Feb. 26, 2018).

"has been interpreted to require something more than a liquidating plan,"[20] pointing to a Collier's section that says "Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation."[21]

Cause for dismissal exists under § 1112(b)(4)(A).

### D. Cause exists for failure to file operating reports.

Under § 1112(b)(4)(F), an unexcused failure to report or file required information constitutes cause for dismissal or conversion. Section 704(a)(8)—made applicable in chapter 11 by §§ 1106(a)(1) and 1107(a), and by Bankruptcy Rule 2015(a)(3)—requires a debtor-in-possession to file periodic financial reports. Operating reports and the financial disclosures they contain "are the life-blood of the chapter 11 process and are more than mere busy work…. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements, and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a

---

[20] *In re Bentley*, No. 09-23107, 2012 Bankr. LEXIS 5969 *12 (Bankr. D. Kan. Dec. 26, 2012).

[21] 7 *Collier on Bankruptcy P* ¶ 1112.04 (16th 2023).

mere technicality."[22] Without the reports, it is impossible for the Court, creditors, and other interested parties to monitor the debtor's operations to determine whether the debtor has—among other things—remained current on post-petition obligations, including taxes and payroll; made improper payments to professionals or pre-petition creditors; or remained current on its monthly insurance premiums.

Habitual noncompliance with reporting requirements calls into question a debtor's ability to effectively reorganize. As one bankruptcy court explained: "If a debtor does not fulfill this basic obligation during the chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case?"[23] Consequently, the importance of filing monthly operating reports "cannot be over-emphasized."[24] Refusal

---

[22] *In re Whetten*, 473 B.R. 380, 383–84 (Bankr. D. Colo. 2012) (citing *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)).

[23] *Id.* at 384.

[24] *Id.* (citing *Myers v. Myers* (*In re Myers*), BAP No. KS-04-054, 2005 Bankr. LEXIS 900, *5 (B.A.P. 10th Cir. May 25, 2005)).

or inability to provide financial disclosure "sounds the death knell of a chapter 11 case."[25]

Timely filing operating reports is one of a chapter 11 debtor's most important duties—one of the obligations assumed in exchange for the privilege of continuing to run the debtor's business and retaining possession of estate assets. The reports provide all stakeholders with information they need to gauge the viability of a reorganization. And belated compliance does not satisfactorily excuse a debtor's failure to satisfy its duties in chapter 11. "Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out."[26]

Here, Moore Roofing filed its October operating report late and has not filed a report for November, which was due December 21. Moore Roofing's financial picture is murky and its failure to file reports is helping to obscure lack of insurance and possibly other problems. Cause exists under § 1112(b)(4)(F).

---

[25] *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995).

[26] *In re Whetten*, 473 B.R. at 383 (citing *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716–17 (Bankr. D. Md. 2011)); *In re Woodale Props., Ltd. v. American Chartered Bank*, 2017 U.S. Dist. LEXIS 26538 *16 (N.D. Ill. Feb. 24, 2017) (noting bankruptcy court's rejection of debtor's offer to bring reports up to date and assertion that "a six-month-old monthly operating report is an insult to the bankruptcy system").

## II. Dismissal is the appropriate remedy.

If the Court finds cause exists, then next it must determine whether the case should be converted to chapter 7 or dismissed, whatever is in the best interests of creditors and the estate. The Code does not define "best interests" in this context, but the standard implies balancing interests in a case-by-case analysis.[27] Ultimately, it is a matter for sound judicial discretion.[28]

Dismissal is the most appropriate option here. Moore Roofing appears to have virtually no unencumbered assets. Conversion would saddle a chapter 7 trustee with obligations but no assets to fund them. The Court should find dismissal to be the most suitable choice.

## Conclusion

Chapter 11 is an ill fit for Moore Roofing, which let most, or all, of its insurance expire, isn't paying payroll taxes, did not file a timely plan, and hasn't kept up with its administrative and reporting obligations. For these reasons, the Court should dismiss the case.

---

[27] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015) (citations omitted).

[28] *In re Dooley's Water & Energy Sols., Inc.*, No. 15-10811, 2016 Bankr. LEXIS 1852, at *5 (Bankr. D. Kan. April 27, 2016) (citing *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28.

Respectfully submitted,

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

By: s/Richard A. Kear
Richard A. Kear, #20724
Trial Attorney
301 N. Main St., Suite 1150
Wichita, KS 67202
316-269-6213 (phone)
Richard.Kear@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 8, 2024, a true and correct copy of this **Motion to Dismiss or Convert** was electronically filed with the Court using the CM/ECF system, which sends notification to all parties of interest participating in this case through the CM/ECF system.

By: s/Richard A. Kear